## THE JACK HAMMOND.
## THE NORWALK.
### THE BARGE 308.
### THE JOSEPH J. O'DONOHUE.

District Court, S. D. New York.
April 19, 1930.

Park, Mattison & Lynch and Frank P. Treanor, Jr., all of New York City (Anthony V. Lynch, Jr., of New York City, of counsel), for libelant Helen A. Hammond.

Haight, Smith, Griffin & Deming, of New York City (Henry M. Hewitt and James McKowan, Jr., both of New York City, of counsel), for the S. S. Norwalk.

J. M. Morrissey and Emery & Pyne, all of New York City (W. Pyne, of New York City, of counsel), for claimant Delaware, L. & W. R. Co.

George P. Nicholson, Corp. Counsel, of New York City (M. J. Troy and W. A. Walling, both of New York City, of counsel), for the City of New York.

## WOOLSEY, J.

I hold the Norwalk and the Joseph J. O'Donohue both to blame for the damages suffered by the barges Hammond and D. L. & W. No. 308 and the cargo of the latter.

It is admitted that the City of New York is entitled to limit its liability.

About 5:43 p. m. on December 16, 1929, whilst the barges Hammond and D. L. & W. No. 308 were lying moored on the southerly side of the pier at the foot of Java street, Greenpoint, on the easterly side of the East River, the steamship Norwalk, coming up the river, came into contact with the Hammond causing damage to it, and also to the No. 308 which was lying between the Hammond and the pier and to the cargo on the No. 308.

The night was clear with a light westerly breeze and the tide strong flood.

When the Norwalk, proceeding up the East River with her navigating lights properly set and lighted, was in the vicinity of Shell Reef Buoy, the ferryboat O'Donohue was seen leaving her slip on the New York side of the river apparently bound for her Greenpoint slip.

The O'Donohue was then off the Norwalk's port bow—about three or four points—and was showing both her red and green lights.

A single-blast signal was blown by the Norwalk but was not answered by the O'Donohue. Half a minute later a second single-blast signal was blown, and again there was not any response.

It was then observed that the O'Donohue was turning to port, and was shutting in her red light. The Norwalk thereupon immediately blew a three-blast signal, put her engine full speed astern and her wheel hard-a-port, and blew alarm signals.

By this manoeuvre the Norwalk avoided collision with the O'Donohue but was carried—as she lost her way under her reversed engine and swung to starboard under her ported helm—into the slip where she struck the barges.

The O'Donohue continued on her way without replying to the Norwalk's signals and passed about twenty feet ahead of the Norwalk's bow.

The collision with the barges is claimed by the Norwalk to have been due to crowding by the ferryboat O'Donohue, which forced the Norwalk to reverse and port her helm and thus throw her towards the pier ends on the easterly side of the East River.

The question to be considered is, therefore, not whether the barges are to recover, for it is obvious that they must, but whether their recovery is to be against the Norwalk alone or also against the O'Donohue, whose insistence on crossing the river ahead of the Norwalk in violation of the starboard hand rule is claimed by the latter to have necessitated the manoeuvre above described.

The O'Donohue was the burdened vessel under the rules, and was undoubtedly in fault for failing to let the Norwalk pass ahead of her. This failure I find was due to her additional fault of not keeping a proper lookout, for, admittedly, she did not see the Norwalk coming up the river, nor did she hear the Norwalk's two signals of one blast each.

It was the Norwalk's duty as the privileged vessel to keep her course and speed until circumstances led her to realize that so doing would lead to a collision.

Admittedly the Norwalk was going up river with a flood tide at twelve knots per hour over the ground. This is in excess of the allowable speed under the so-called East River statute, and I find that her speed contributed to the collision because, with the tide behind her, such a speed made it too difficult for her to manoeuvre in narrow waters. She was not sufficiently under control as the circumstances of the accident and her narrow escape from a collision with the O'Donohue clearly show.

I find, therefore, that the collision between the Norwalk and the barges was due to a combination of two causes, first, the excessive speed at which the Norwalk was proceeding up river when she reversed to avoid the O'Donohue, and, second, the fact that the

O'Donohue's breach of the starboard hand rule made the reversal necessary.

The result is that both vessels are responsible for the damage to the barges, and that the Norwalk, against which the barges first brought suit, should have the right to recoup itself against the City of New York, as owner of the O'Donohue, for one-half of any damages and costs paid by it to the barges.

The barges may have their costs, and, as between the Norwalk and the O'Donohue, costs may be divided.

An interlocutory decree in accordance herewith may be presented for settlement on three days' notice.